UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | **2:07-CR-179-IPJ-RRA** |
| ) | **(Superseding)** |
| MICHAEL WAYNE BOBO, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

Defendant Michael Wayne Bobo ("Bobo"), by and through his undersigned attorney, hereby files this Sentencing Memorandum.

**The Presentence Investigation Report**

1. The Presentence Investigation Report ("PSR") was filed on January 8, 2008, and calculates the range for imprisonment from 57 to 71 months. PSR at 66. While Bobo has not filed any formal objection to the PSR, he strongly disagrees with this sentencing range.

2. The PSR is based on the probation officer's application of the U.S. Sentencing Guidelines ("Guidelines") only. However, pursuant to *Gall v. U.S.*, 128 S.Ct. 586, 596-597 (U.S.2007), the Guidelines' range may not be presumed reasonable. The sentencing judge "must make an individualized assessment based on the facts presented." *Gall*, 128 S.Ct. at 597. *Gall* also makes clear that any

attempt to give special weight to the sentencing guideline is contrary to its holding in *Booker*, which means the guidelines are advisory only.  See also, *Kimbrough v. United States*, 552 U.S. ___, 2007 WL 4292040 (Dec. 10, 2007) (allowing judges to impose lower sentences based on the unfairness of the 100 to 1 crack cocaine ratio).  Both *Gall* and *Kimbrough*, decided the same day make it clear that the district courts are only required to give "some weight" to the advisory guidelines, as they are to the other 18 U.S.C. § 3553(a) factors.

      3.      The opinion in *United States v. Booker*, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), "instructed district courts to read the United States Sentencing Guidelines as 'effectively advisory,' [*Booker*, 543 U.S. at 245], 125 S.Ct. 738.  In accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence. *Booker* further instructed that 'reasonableness' is the standard controlling appellate review of the sentences district courts impose." *Kimbrough v. U.S.*, 128 S.Ct. 558, 564 (U.S.2007) upholding sentence of 180 months compared to Guidelines' 228-to-270-month range.  As a result of *Booker*, "the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are 'reasonable.' *Gall*, 128 S.Ct. at 594.

4.      Although a "district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications," the Supreme Court has rejected any "appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range " and "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall*, 128 S.Ct. at 594-595.

### Factors A Court Must Consider

5.      In sentencing a criminal defendant, there are a number of factors this Court must consider in addition to the Sentencing Guidelines. Above all, this Court must impose a sentence "sufficient, but not greater than necessary, to comply with" the factors listed in 18 U.S.C. § 3553.

> **"[T]he nature and circumstances of the offense and the history and characteristics of the defendant:" 18 USC § 3553(a)(1):**

6.      Admittedly, Bobo was in the possession of a very small amount of marijuana, of a total of ten firearms (rifles and handguns), and of various materials which if combined <u>theoretically could have been</u> used to construct explosive devices. However, a thorough search of Bobo's residence revealed not one single

actual explosive device, i.e., improvised explosive device, bomb, etc.

7.      Bobo owned four rifles, three shotguns, and three pistols. Each firearm is legal and does not require any special permit to own or possess. PSR ¶ 11.

8.      The total amount of marijuana had a net weight of only 2.1 grams or 0.074075 oz.[1] PSR ¶ 12. There is no dispute that this marijuana was solely for Bobo's own personal use.

9.      The marijuana and the firearms were not located in the same room. The pistols and long guns were located in an attic work and storage room at the end of the hall on the second floor of Bobo's residence. The marijuana was located in Bobo's bedroom. The attic room and Bobo's bedroom are on the same floor but are separated by a bathroom and a spare bedroom.

10.     Multiple and various <u>alleged</u> bomb-making "components" were located at Bobo's residence. PSR ¶ 13. No dynamite, TNT or similar commercial explosive was present. Common, readily available off-the-shelf items such as black powder[2], firearm ammunition or bullets, and power for reloading firearms

---

    [1]    One gram = .035 ounces. A raisin, a small paper clip and one dime <u>each</u> weigh about one gram. http://www.metricamerica.com/gram.htm (accessed January 17, 2008).

    [2]    Black powder may be purchased on-line at Cabela's. http://www.cabelas.com/cabelas/en/templates/index/index-display.jsp?_DARGS=/cabelas/en/common/subcategory/subcategory-index.jsp.14_A&_DAV=search_redir&id=cat601638&navCount

were present. Black powder, reloading powder and firearm ammunition can be purchased at Walmart and sporting goods stores[3] and require no permit or license. Every "component" located in Bobo's residence has a valid purpose apart from the construction of bombs or explosives. Not one single "component" or firearm in and of itself is illegal to own or possess. USA v. Bobo, 2:07-CR-179-IPJ-RRA, detention hearing, June 28, 2007 at 21.

11. The "training grenade hulls and fuse assemblies" and the "military grenade strikers" described at PSR ¶ 13 were inert and contained no explosive material. They had been "hollowed out," and, alone, did not constitute contraband. USA v. Bobo, 2:07-CR-179-IPJ-RRA, detention hearing, June 28, 2007 at 21. They are readily available as collectibles, souvenirs, and memorabilia.[4]

---

=0&parentId=&navAction=push&returnPage=&returnQueryString=&cmCat=search_redir&parentType=subcategory&rid= (accessed January 23, 2008). Blackpowder is not the same as smokeless powder or "gunpowder." Gunpowder for reloading modern firearms is typically available at gun shops. Alliant Powder (http://www.alliantpowder.com/ default.aspx accessed January 23, 2008). "As handloaders, we are blessed with the largest selection and quality of canister-grade powders in history. There are over a 100 different smokeless powder formulations available from the major manufacturers and importers, including Accurate Arms, Alliant, Hodgdon, IMR, NobelSport, Norma, Vihtavuori, and Western Powders plus dozens of other formulations through smaller surplus powder dealers." Gunpowder An Insider's View, http://www.encyclopedia.com/doc/1G1-76558924.html (accessed January 23, 2008).

[3] Reloading presses, tools and equipment were also present along with ammunition Bobo had hand-loaded. USA v. Bobo, 2:07-CR-179-IPJ-RRA, detention hearing, June 28, 2007 at 18 ("He [Bobo] stated to me that he reloads. I [ATF agent] think there was an indicia of the fact that he reloads.").

[4] http://www.imsplus.com/ims35.html (accessed January 23, 2008) : "3-piece full size cast steel dummy Mark II pineapple grenade with removable fuse assembly, spoon, pin &

12. Fifteen improvised explosive devices or IED's are attributed to Bobo. The PSR notes that "an exposives expert with the ATFE would testify that 15 improvised explosive devices (IED's) could have been readily constructed from the materials present." PSR ¶ 13. Bobo submits that this is an arbitrary number. "Since these devices are improvised, there are no specific guidelines for Explosive Ordnance Disposal (EOD) personnel to use to positively identify or categorize them." http://en.wikipedia.org/wiki/ Improvised_explosive_device (accessed January 17, 2008). Requiring only a fuse (or some type of device to ignite the powder), the powder (the explosive), and a container, "[a]n IED can be almost anything with any type of material and initiator." http://www.globalsecurity.org/ military/intro/ied.htm (accessed January 23, 2008).

13. Bobo had stored a substantial quantity of water and food items in the same attic room with most of the seized material. USA v. Bobo, 2:07-CR-179-IPJ-RRA, detention hearing, June 28, 2007 at 20.

14. All the evidence in this case indicates that, if anything, Bobo was a

---

ring. ... $6.75 ea.
  https://secure.armysurplusforless.com//productView.php?id=2321 (accessed January 23, 2008): "Dummy Grenade Demilitarized: No fuse, bottom is drilled out  Available in three styles: Pineapple, Baseball, and Lemon . ... $5.99." Such items may also be purchased on Amazon.com and E-Bay (search term "hand grenade").

6

self-styled survivalist[5] preparing to <u>defend himself</u> in the event of future disaster.[6] At one time Bobo lived on a small rural farm and raised small livestock and vegetables for food and sale. Bobo "enjoyed the independent and self sufficient lifestyle of farming." PSR at ¶ 45. A review of the books contained in Bobo's library support the fact that Bobo was a survivalist, not a militant racist. All his firearms were for defensive purposes. Although no actual "bomb" was present, any such device would have been for personal defense only.

15.   The Court is urged to listen to the tape recording made by the undercover agent in this case. While racist comments are made, none are made by Bobo and, in fact, Bobo speaks favorably of hard working African Americans.

---

[5] Survivalism is a commonly used term for the subculture or movement of people anticipating and making preparations for a future disruption in local, regional or worldwide social or political order. Survivalists often prepare for this anticipated disruption by learning skills (e.g., emergency medical training, wilderness survival, stockpiling food and water, and building structures that will help them to survive (e.g., a survival retreat or underground shelter). http://en.wikipedia. org/wiki/Survivalism (accessed January 23, 2008).   See generally <u>Survival Retreat: A Total Plan For Retreat Defense</u>, Ragnar Benson, Paperback, Paladin Press (1983), ISBN: 0873642759.

[6] "Survival preparations must incorporate a plan of action regarding those unfortunates who have never given survival or self-reliance a second thought. Simply stockpiling food, water, medicine, fuel and firearms is not going to be enough. Even planning a remote retreat in the event of an extended survival situation will not be enough. Sooner or later you will have to deal with unprepared refugees, be they friends & neighbors or total strangers." http://www.geocities.com/Athens/Atlantis/8820/whysurvive.htm (accessed January 23, 2008). The ideal survival retreat would be "[s]tocked with enough weapons and ammunition to defend it from small groups of marauding invaders, should it come to that." http://www.captaindaves. com/guide/bugout.htm (accessed January 23, 2008).

16.     The PSR reports that Bobo was "an associate with Free Militia ... members who were stockpiling weapons." PSR at ¶ 23. That allegation is not a part of the factual basis of the plea agreement. Bobo was "associated" with these members in the sense that he did talk to some of them. There is no evidence that Bobo was a member of their group or a member of any militant or "militia" group. He was not associated or in conspiracy with the other individuals referenced in the PSR.

> **"[T]he need for the sentence imposed-- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" 18 USC § 3553(a)(2)(A):**

17.     The offenses Bobo is charged with are serious. Nothing can change that fact. However, Bobo's actual conduct is not representative of the seriousness of the offense charged. While certainly not imputing any bad faith, the Government has piled on the charges and has charged Bobo with as many offenses as possible. And while technically, Bobo is guilty of that with which he is charged, the severity of the sentence he faces has become overstated.

Bobo has admitted his conduct and stands ready to accept the consequences. However, as a practical matter with regard to the future construction of explosives - as only potential bomb components were present - Bobo only posed a threat to himself, perhaps his parents (should there be an accidental detonation), and, as

noted above, those against whom Bobo was compelled to defend himself and his property.  There is no evidence or indication that Bobo every possessed any component or explosive outside of his residence.

      18.    A Gallop poll conducted in October of 2007 shows that 42% of all Americans admit ownership of a firearm.[7]  Twenty-seven gun shows are scheduled for Alabama alone in 2005.[7]  Hunting and fishing are without question Alabama's number one sports outside of football.  While the number of guns per household may vary (due to pro- and anti-gun views and the reluctance of gun owners to admit the number of firearms actually owned due to fear of gun control), this Court can take judicial knowledge that it is not unusual for one gun owner in Alabama and the South to own more than one firearm.  Every long gun (rife and shotgun) owned by Bobo was suitable for hunting.

---

[7] http://www.gallup.com/poll/1645/Guns.aspx (accessed January 28, 2008).  "The number of gun owners is also at an all-time high. The U.S. population is at an all-time high (294 million), and rises about 1% annually.5 Numerous surveys over the last 40+ years have found that almost half of all households have at least one gun owner.6 Some surveys since the late 1990s have indicated a smaller incidence of gun ownership,7 probably because of some respondents` concerns about "gun control," residually due, perhaps, to the anti-gun policies of the Clinton Administration." http://www.nraila.org/Issues/FactSheets/Read.aspx?ID=126 (accessed January 28, 2008) (citing source material).

[7] http://www.gunshows-usa.com/alabama.htm (accessed January 28, 2008).

**"[T]he need for the sentence imposed-- to afford adequate deterrence to criminal conduct" 18 USC § 3553(a)(2)(B):**

19.     Bobo suffers more than merely imprisonment.  He is branded with a felony conviction, will lose his right to vote, and will lose his right to own or possess a firearm.  He is a young man whose future will be extremely limited by his conviction.  There is no indication present that Bobo requires imprisonment in order to deter future criminal conduct.

Furthermore, unlike some of the members of The Free Militia, Bobo has not previously been imprisoned so that even the threat of actual incarceration is more significant for Bobo.  Therefore, a sentence well below the Guideline range is more just.  See U.S. v. Baker,  445 F.3d 987, 992 (7th Cir. 2006) ("Also significant is the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned. Consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for 'just punishment,' id. § 3553(a)(2)(A), and 'adequate deterrence,' id. § 3553(a)(2)(B)."): U.S. v. Willis, 2007 WL 926148 (E.D.Wis. March 28, 2007) ("senetence provided a substantial punishment for someone like defendant, sho had never been to jail"); U.S. v. McGee, 2007 WL 858643 (E.D.Wis. March 19, 2007) ("generally a lesser period of imprisonment is required to deter a defendant

10

not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served some serious time"); U.S. v. Cull, 446 F.Supp.2d 961 (E.D.Wis. 2006) (reduced sentence for defendant who had never before been confined "was sufficient to impress upon him the seriousness of the offense and to deter others under similar circumstances").

**"[T]he need for the sentence imposed-- to protect the public from further crimes of the defendant" 18 USC § 3553(a)(2)(C):**

20.     There is no evidence that Bobo presents no threat of future dangerousness to anyone.  Upon the return of the superceding indictment, Bobo was permitted to remain free on the same bomb posted for the initial indictment. (Doc. 23).

**"[T]he kinds of sentences available" 18 USC § 3553(a)(3):**

21.     Bobo has demonstrated that he is an excellent candidate for probation.  Immediately, upon his arrest, Bobo waived his constitutional rights to silence and counsel, subjected himself to interrogation, and cooperated with the investigators and agents.  USA v. Bobo, 2:07-CR-179-IPJ-RRA, detention hearing, June 28, 2007 at 24.  He has accepted responsibility by pleading guilty.  Since his release following his arrest on April 26, 2007, Bobo has abided by all the terms and requirements of his supervision.  Bobo "did well" on supervision.  USA v.

Bobo, 2:07-CR-179-IPJ-RRA, detention hearing, June 28, 2007 at 38. In fact, his adjustment to supervision is described as "exemplary." PSR at ¶ 9.

22. The PSR has recommended a sentencing range of 57 (four years nine months) to 71 (five years 11 months) months. This range is simply draconian and outrageous under the particular facts of this case.

> **"[T]he need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" 18 USC § 3553(a)(6):**

23. The PSR states that Bobo was an "associate" of five members of The Free Militia: Cunningham, Dillard, McElroy, Hughes, and Garrett. PSR at ¶ 23. These individuals were charged in a single 14 count indictment (USA v. Cunningham, Northern District of Alabama, 4:07-cr-00145- UWC-RRA-1) as follows:

Count 1: Cole, Cunningham, Dillard, Hughes and McElroy were charged with conspiracy to make grenades in violation of 26 USC § 5845(a)(8).

Count 2: Cole, Dillard and Hughes were charged with possession of a sawed off shotgun in violation of 26 USC § 5861(d).

Count 3: Cole, Cunningham, Dillard, Hughes and McElroy were charged with making 10 grenades in violation of 26 USC § 5861(f) and 18 USC § 2).

Count 4: Cole, Dillard and Hughes were charged with making a silencer in violation of 26 USC § 5861(f) and 18 USC § 2.

Count 5: Dillard was charged with possession of a firearm after a conviction of a felony in violation of 18 USC § 922(g)(1); and

Count 6: Dillard was charged with possession of two grenades in violation of 26 USC § 5861(d).

Count 7: Dillard and McElroy were charged with possession with intent to distribute 100 or more marijuana plants in violation of 21 USC §§ 841(1) and (b)(1)(B).

Count 8: McElroy was charged with possessing marijuana and a firearm in violation of 18 USC § 922(g)(3).

Count 9: Hughes was charged with possession of a machine gun in violation of 18 USC § 922(o);

Count 10: Hughes was charged with possession of 80 grenades in violation of 26 USC § 5861(d).

Count 11: Hughes was charged with possession of 68 improvised explosive projectiles and a launcher in violation of 26 USC § 5861(d).

Count 12: Hughes was charged with possession of a silencer in violation of 26 USC § 5861(f)).

Count 13: Cunningham was charged with possession of 14 grenades in violation of 26 USC § 5845(a)(8).

Count 14: Cunningham was charged with possession of a sawed off shotgun in violation of 26 USC § 5861(d).

24.   Cole plead guilty to Counts 1, 2 and 3 and was sentenced to 37 months imprisonment with 24 months supervised release.

25.   Cunningham plead guilty to Count 1 and 2 and was sentenced to 30

months imprisonment with 24 months supervised release.

26.  Dillard plead guilty to Counts 1, 2, 3, 4, 5, and 6 and was sentenced to 70 months imprisonment with 24 months supervised release.

27.  Hughes plead guilty to Counts 1, 2, 3, 4, 9, 10, 11 and 12 and was sentenced to 24 months imprisonment with 24 months supervised release.

28.  McElroy plead guilty to Counts 1, 3 and 8 and was sentenced to 41 months imprisonment with 24 months supervised release.

29.  In no case was a fine imposed.

30.  Each of these alleged "associates" was a member of "The Free Militia." Each held a "rank" of either private (McElroy), sergeant (Cunningham), lieutenant (Cole), captain (Hughes), or major (Dillard) in The Free Militia. USA v. Cunningham, Doc. 22(indictment), Introduction paragraphs (a) - (f).

31.  There is no allegation or contention that Bobo was a member of The Free Militia. Bobo was not charged in the same indictment with these Militiamen. Bobo was not charged with the same crime as any member of The Free Militia. Bobo held no "rank" in The Free Militia. Bobo was not a member of The Free Militia and should not be sentenced as if he were. He must be sentenced on his own and without consideration for what the actual members of The Free Militia conspiracy received.

**"[T]he need to provide restitution to any victims of the offense"
18 USC § 3553(a)(7):**

32.     There are no victims and restitution is not an issue.  PSR at ¶ 75.

**Additional considerations why Bobo should not be sentenced under the Sentencing Guidelines or Should be Granted a Downward Departure.**

33.     Bobo has no significant criminal history and no history of violence.

34.     Bobo's father runs his own pest-control company.  It is a small business with only two employees - Bobo and his dad.  Therefore, any incarceration will have a financial effect on the entire family.

35.     At the time of the offenses, Bobo was living with his parents in Trussville, Alabama, in a comfortable, upper middle class home in a residential neighborhood.  Bobo is adopted.  Mr. and Mrs. Bobo have not abandoned their son and continue to provide strong family and financial support in the legal problems Bobo is facing.  These are factors this Court may consider in sentencing. U.S. v. Clark, 225 Fed.Appx. 376, 380 (6th 2007) (strong family support); U.S. v. Jacobson, 57 Fed.Appx. 468, 469 (2nd Cir. 2003) (effect of incarceration on innocent third parties).

36.     Bobo has a small physical build and statute.  Although 32 years of age, he has a youthful appearance.  He will will, no doubt, be especially subject to

15

being victimized and brutalized if imprisoned. For him, the prison environment will be especially harsh and cruel.

> Marjorie Rifkin, *Farmer v. Brennan: Spotlight on an Obvious Risk of Rape in a Hidden World*, 26 Colum.Hum.Rts.L.Rev. 273, 276, 278, & n. 24 (1995) ("[B]rutal assault and homosexual rape are facts of daily life in men's prisons.... Correctional administrators have long recognized that prisoners likely to be victimized are overwhelmingly young first offenders of slight build with passive, soft-spoken personalities.") (collecting cases describing characteristics of inmates prone to sexual abuse); Jeff Potts, American Penal Institutions and Two Alternative Proposals for Punishment, 34 S.Tex.L.Rev. 443, 470-72 (1993) (citing statistics concerning inmate-on-inmate sexual assault, noting effects of rape and the groups of inmates who are more at risk for rape).

U.S. v. Ruff, 998 F.Supp. 1351, 1355 n. 14 (M.D.Ala.1998).

**Conclusion**

In sentencing, the "overarching provision" is for the sentencing court to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." Kimbrough v. U.S., 128 S.Ct. 558, 570 (U.S.2007). In this particular case, this Court can achieve those goals by sentencing Bobo to a lengthy period of home confinement and probation including

drug testing and any other condition this Court may deem appropriate.

                                                Respectfully submitted,

                                                s/ ***William M. Bowen, Jr.***
                                                William M. Bowen, Jr.
                                                Jonathan Cross

                                                Attorneys for Michael W. Bobo

# CERTIFICATE OF SERVICE

CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2008, I filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the individuals listed below.

Alice H Martin, US Attorney
US ATTORNEY'S OFFICE
1801 4th Avenue North
Birmingham, AL 35203-2101
244-2001
Email: alice.martin@usdoj.gov

Michael W Whisonant
US ATTORNEY'S OFFICE
1801 4th Avenue North
Birmingham, AL 35203-2101
244-2001
Email: Mike.Whisonant@usdoj.gov

s/ ***William M. Bowen, Jr.***
William M. Bowen, Jr.